IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL THADDEUS WADE, | * |
| Plaintiff, | * |
| v. | * |
| ELECTROMET CORP., et al., | *     CIVIL NO. JKB-21-1133 |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

*Pro se* Plaintiff Michael Thaddeus Wade brings retaliation claims against his former employer, Electromet Corporation ("Electromet"), and three individuals Sandy Miller (Human Resources), Randy Goldman (Plant Manager), and Todd Sites (Supervisor). (*See generally* Compl., ECF No. 1.) Now pending before the Court is Defendants' Motion to Dismiss. (ECF No. 22.) The Motion to Dismiss is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Court will deny in part and grant in part the Motion to Dismiss.

### I.   *Factual Background*[1]

Wade alleges that he "reported two separate incidents of co workers using the 'N' word[,]" was thereafter retaliated against, and ultimately forced to quit his job. (Compl. at 6.) The first of

---

[1] In summarizing the allegations of the Complaint, the Court construes all facts in the light most favorable to the plaintiff, as is required on a motion to dismiss. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "As part of the Court's duty to liberally construe *pro se* pleadings, the Court has discretion to consider new allegations made by a *pro se* plaintiff in response to a motion to dismiss, even though, ordinarily, a party cannot amend its pleading through its briefs." *Ezinne v. Md. State Dep't of Pub. Safety & Corr. Servs.*, Civ. No. JKB-18-2201, 2019 WL 2162873, at *2 (D. Md. May 17, 2019). The Court will therefore consider allegations made both in Wade's Complaint and in his Response to Defendants' Motion to Dismiss. (*See* ECF Nos. 1, 28.)

1

these incidents occurred in September 2020, when one of Wade's co-workers told him that another co-worker had used the slur while telling a story. (Opp'n to Mot. Dismiss at 1, ECF No. 28 ("He began to tell her about a club or bar over in the state West Virginia. . . . She said, 'When he opened up the door and seen all those [slur], [h]e didn't go in.'").) After hearing about the use of the slur, Wade reported the incident to Miller, his human resources manager. (*Id.*) Miller spoke to Wade's co-workers, and they confirmed the story. (*Id.*) About a week later, Wade overheard two co-workers talking and using the slur. (*Id.* at 2 ("Rod said to Tyler that Richard Pryor says the [slur] all the time in his comedy shows. So, what's the problem. Then, Tyler says yea they always saying [the slur] in rap music.").) Wade alleges that he reported this incident to "the plant manager in Human Resources," who "actually tried to downplay the situation by telling [Wade] that while he was in the military it was basically common to hear the [slur]." (*Id.*)[2]

Wade alleges that, after he reported these incidents, he "became a target," his supervisor and plant manager subjected him to false accusations, and he was ultimately forced to quit. (Compl. at 6.) Although the allegations are somewhat unclear, it appears that Wade's supervisor, Sites, was very watchful and critical of Wade following Wade's reports of his co-workers' use of the racial slur. (Opp'n to Mot. Dismiss at 2–3.) For instance, Wade alleges that after he reported these incidents, he "started noticing things that [his] supervisor would do[,]" like "following [him] without his knowledge" and preventing him from "operat[ing his] machine." (*Id.* at 2.) He also alleges that his supervisor "would not allow [Wade] to be trained on other machinery." (*Id.*)

Wade alleges that he was ultimately "tak[en] to the Human Resource office[, w]here Ms. Miller, Randy [presumably Goldman], and Todd [presumably Sites] were sitting." (*Id.* at 3.) He

---

[2] Wade also describes an incident during which a co-worker named Dustin used the slur, (Opp'n to Mot. Dismiss at 4), but it is not clear whether this is a third incident, or whether this refers to the first incident. Wade explained that he reported this incident, that Dustin was aware that he had reported it, and that Dustin did not face repercussions for using the slur. (*Id.*)

2

alleges that they "accused [him] of being on [his] phone and out of [his] work area." (*Id.*) Wade explained during the meeting that this was not true and that he believed that this accusation was in retaliation for reporting the use of the slur. (*Id.*) Wade avers that his written warning indicated that he was reprimanded for "refusing to do [his] job" and that it quoted a handbook that neither he nor any other employees received. (*Id.* at 5.) Wade alleges that, prior to this, he had not been disciplined in the 17 years that he worked for the company, and that he had always received "satisfactory/good" performance reviews. (*Id.*)

Wade alleges that, when Miller stood up to "get[ him] a copy of [his] final writ[ten] warning," Wade said "lying assholes" under his breath, which caused Sites to claim that Wade threatened him. (*Id.* at 3.) The next day, Miller called Wade to inform him that he had been suspended for three days without pay for threatening behavior. (*Id.* at 4.) Although the circumstances surrounding Wade's departure from Electromet are not completely fleshed out in the briefing, Wade explained that he "had to leave [his] job because [he] could not work in a hostile work environment." (*Id.* at 5.) According to Wade, he was "force[d] to quit." (Compl. at 7.)

Wade alleges that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") on or around November 5, 2020, and that he received a Right to Sue letter on February 1, 2021. (Compl. at 6.) Defendants attach a copy of the letter, which has an issuance date of February 1, 2021, to their Motion to Dismiss.[3] (ECF No. 22-2.)

---

[3] The Court's consideration of this document does not convert Defendants' Motion to Dismiss into one for summary judgment. Wade referenced the EEOC Right to Sue letter in his Complaint and the letter itself was attached to Defendants' Motion to Dismiss. Wade has not objected to its consideration. *See White v. Mortg. Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) ("Here, Defendant has appended to its Motion, and Plaintiff has incorporated by reference, the Charge of Discrimination, and that document was not included in the attachments to Plaintiff's Complaint. As this document is integral to the Complaint and since Plaintiff has expressed no objection, the Court will consider this document in ruling on the Motion to Dismiss, thus not converting it to a Motion for Summary Judgment.").

Wade's Complaint was docketed on May 10, 2021, bringing Title VII retaliation claims against Miller, Goldman, Sites (collectively, the "Individual Defendants"), and Electromet. However, although the stamp indicating the date the Court received the Complaint is illegible, the envelope docketed with his Complaint indicates a "Scheduled Delivery Date" of April 29, 2021. (ECF No. 1-3.) Further, Wade filed a Motion for Leave to Proceed In Forma Pauperis, which has two date stamps from the Clerk's Office: one dated May 3, 2021 and on the other May 10, 2021. (ECF No. 2.) In his Response to Defendants' Motion to Dismiss, Wade explains that, after he sent certain documents to the Court, "[he] received a phone call from the clerk of court telling [him] about the cover sheet and that [his] other documents were received prior to that date." (Opp'n to Mot. Dismiss at 5.)

## II.   *Legal Standard*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

4

*Pro se* plaintiffs are held to a less stringent standard than lawyers, and courts construe their pleadings liberally, no matter how inartfully pled. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Carmax Auto Superstores, Inc. v. Sibley*, 194 F. Supp. 3d 392, 401 (D. Md. 2016), *aff'd*, 730 F. App'x 174 (4th Cir. 2018) ("The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint in order for it to survive a motion to dismiss."). Liberal construction is especially appropriate where a *pro se* plaintiff alleges civil rights violations. *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 722 (4th Cir. 2010) Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *Robb v. Md. Aviation Admin.*, Civ. No. JKB-14-1421, 2014 WL 4056030, at *3 (D. Md. Aug. 15, 2014).

### III. *Analysis*

Wade specifically references Title VII retaliation in his Complaint, and Defendants' Motion to Dismiss is limited to discussion of only a Title VII retaliation claim. The Court will grant in part and deny in part the Motion to Dismiss as to this claim. Further, because the Court is required to construe Wade's complaint broadly, the Court finds that Wade has also raised 42 U.S.C. § 1981 retaliation claim against all Defendants. That claim will also survive dismissal. Therefore, Wade's Title VII retaliation claim will survive against Electromet and his § 1981 retaliation claim will survive against all Defendants.

#### A. *Title VII Retaliation Claim*

Defendants argue that (1) the Title VII claim must be dismissed in its entirety because Wade untimely filed his Complaint and (2) the Title VII claims against the Individual Defendants—Miller, Goldman, and Sites—must be dismissed because Title VII does not provide

5

for liability against employees. *(See generally* Mot. Dismiss Mem. Supp., ECF No. 22-1.) The Court will deny the Motion to Dismiss with respect to timeliness but will grant the Motion to Dismiss as to the Individual Defendants. Therefore, Wade's Title VII retaliation claim will survive only as to Electromet.

### *1. Timeliness*

Defendants argue that Wade did not file his Complaint within 90 days of receiving his Right to Sue letter. (Mot. Dismiss Mem. Supp. at 3–5.) Defendants so argue because the Right to Sue letter is dated February 1, 2021, and Wade's Complaint was docketed 98 days later on May 10, 2021. (*Id.* at 4–5.) The Court will not dismiss Wade's Title VII retaliation claim on this basis.

A civil action brought under Title VII must be filed within 90 days of the date that the claimant received a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1); *see also Aziz v. Orbital Scis. Corp.*, 165 F.3d 17 (Table) (4th Cir. 1998). This 90-day limit is treated "like a statute of limitations." *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 (4th Cir. 2005) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).) As the Fourth Circuit has explained, a motion to dismiss "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). There are "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint[,]" and a court should only do so "if all facts necessary to the affirmative defense clearly appear *on the face of the complaint.*" *Id.* (citations, quotations, and alterations omitted) (emphasis in original).

To determine whether Wade's Complaint violates the 90-day requirement, the Court would need to consider numerous facts outside of the Complaint. It is therefore not appropriate to resolve this question on a motion to dismiss. As an initial matter, the Court notes that the operative date

for beginning the 90 days is not the date a right to sue letter is issued, but the date it is received. *See Ish v. Arlington Cnty. Va.*, 918 F.2d 955 (Table), 1990 WL 180127, at *1 (4th Cir. 1990) ("[T]he 90 days begins on receipt of the right to sue letter, not on mailing."). Here, given that the date of issuance on the Right to Sue letter is February 1, 2021, and there is not yet evidence of an actual date of receipt, Wade is entitled at this stage to a presumption that he received the letter no earlier than February 4, 2021, which would have required him to file his Complaint by May 5, 2021.[4] *See Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426–27 (D. Md. 2013) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984)) ("In the absence of evidence of the date of receipt, a right-to-sue letter is presumed to have been received by the plaintiff three days after it was issued and mailed.")

Given the conflicting dates in the filings and Wade's explanation that, after mailing his Complaint, he spoke with the Clerk's Office regarding an apparent deficiency in his filing, determining when Wade actually filed his Complaint may require the Court to examine facts relating to when the Clerk's Office received Wade's Complaint and what Wade's initial mailing included. *See Robinson v. Yellow Freight Sys.*, 892 F.2d 74 (Table), 1989 WL 152510, at *2 (4th Cir. 1989) (citations omitted) ("[C]onsistent with the spirit of the federal rules and the liberal treatment accorded pro se petitions, we hold that [plaintiff's] Title VII complaint was filed when he delivered his complaint to the clerk."). Wade may also be entitled to equitable tolling. *See Ish*, 918 F.2d 955 (Table), 1990 WL 180127, at *1 (finding equitable tolling to be appropriate where plaintiff first appeared during the limitations period but filed her complaint after the limitations

---

[4] The Court recognizes that Wade indicated in his form Complaint that he received the Right to Sue letter on February 1, 2021. (Compl. at 6.) However, it is unlikely that the letter was both issued by the EEOC and received by Wade on the same day. *See Fuller v. Exel Logistics*, Civ. No. 17-1692-DCC-KFM, 2018 WL 3949952, at *3 (D.S.C. Mar. 16, 2018), *report and recommendation adopted*, Civ. No. 17-CV-1692-AMQ-KFM, 2018 WL 3933756 (D.S.C. Aug. 16, 2018) (explaining that, although plaintiff indicated that he received the letter on the same day that it was mailed, "[t]he undersigned notes that it would be highly unlikely for the notice of right to sue to be both mailed by the EEOC and received by the plaintiff on the same day.").

7

period when she "was told by the court staff to delay paying the filing fee until the magistrate ruled on her application to proceed in forma pauperis").

Given these considerations, the Court concludes that determining whether Wade's Complaint is timely will require the Court to consider evidence beyond the face of the Complaint—a reality that makes disposition of this issue improper at the motion to dismiss stage.

### 2. *Proper Defendants*

Defendants also argue that the Complaint should be dismissed as to the Individual Defendants because Title VII does not provide for individual liability. (Mot. Dismiss Mem. Supp. at 5.) Because nothing in the Complaint leads this Court to understand that Miller, Golden, or Sites are employers within the meaning of Title VII, the Title VII retaliation claim will be dismissed as to these individuals. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'"); *Dobson v. Harnden Grp. LLC*, Civ. No. JKB-18-3624, 2019 WL 1242527, at *2 (D. Md. Mar. 18, 2019) (dismissing Title VII claims against individual defendants where "[p]laintiff d[id] not allege that the individual defendants . . . are his employers" and where "the individual defendants appear to be mere supervisors"). Therefore, the Title VII claim will survive only against Electromet.

### B. *Section 1981 Retaliation Claim*

The Court must construe Wade's *pro se* Complaint liberally, without regard to the specific labels Wade has given his claims. *Hairston v. DVA, Reg'l VA Off. Martinsburg*, 841 F. App'x 565, 568 (4th Cir. 2021) (citing *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020)) ("It is well-established that pro se complaints are to be construed liberally, interpreted to 'raise the strongest arguments that they suggest.'"). That Wade only checked the box on the form Complaint

8

indicating that he was alleging a Title VII retaliation claim does not foreclose this Court's duty to assess his Complaint for other claims. *See Hairston*, 841 F. App'x at 568 (citations omitted) (explaining that "treat[ing] [plaintiff's] complaint as a Title VII claim because the complaint's caption lists 'Title VII Discrimination' along with 'Civil Suit 28 U.S.C. § 1331' . . . elevates form over substance," and finding that, "[l]iberally and properly construed, [plaintiff's] claim was not brought under Title VII").

Because "[a] prima facie retaliation claim under 42 U.S.C. § 1981 has the same elements" as a Title VII retaliation claim, the Court finds that Wade has also alleged a § 1981 retaliation claim. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015); *see Brown v. Dep't of Health & Mental Hygiene*, 7 F.3d 222 (Table), 1993 WL 359466, at *1 (4th Cir. 1993) (remanding where the district court "construed [plaintiff's] pro se complaint only to raise claims under §§ 1983, 1985, 1988, the Fifth and Fourteenth amendments, and Maryland tort law" where the Fourth Circuit's "review of the complaint shows that [plaintiff] also raised claims under Title VII and § 1981 [because] the gist of [plaintiff's] concerns involved employment discrimination, i.e., allegations of a wrongful discharge based on racial discrimination."); *Holmes v. Burris Liquor Stores, Inc.*, Civ. No. 13-1866-DCN-BHH, 2014 WL 468930, at *4 (D.S.C. Feb. 4, 2014), *aff'd sub nom. Holmes v. Burris Liquor Store, Inc.*, 573 F. App'x 253 (4th Cir. 2014) (citations omitted) ("[T]he Court is likely obligated to consider the plaintiff's Complaint as having implicated 42 U.S.C. § 1981 . . . . Indeed, Title VII and Section 1981 claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). Defendants make no substantive arguments in support of dismissing the Title VII retaliation claim that would be applicable to a § 1981 retaliation claim.[5]

---

[5] A § 1981 retaliation claim is not vulnerable to the timing or individual liability arguments Defendants assert with respect to the Title VII retaliation claim. Section 1981 claims are not subject to an administrative exhaustion

9

To establish a § 1981 retaliation claim, "a plaintiff must eventually show that (1) he engaged in a protected activity; (2) his employer took adverse action against him, and (3) a causal relationship existed between the two events." *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 F. App'x 690, 693 (4th Cir. 2020). With respect to the first element, both formal and informal complaints alleging discrimination can constitute protected activity. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001). Wade has alleged that he engaged in protected activity at least twice when he reported the two instances of the use of the racial slur. *See Boyer-Liberto*, 786 F.3d at 282 ("[A]n employee is protected from retaliation when she opposes a hostile work environment that, although not fully formed, is in progress."); *Hooven-Lewis v. Caldera*, 249 F.3d at 273 (explaining that both formal and informal complaints alleging discrimination can form the basis of a retaliation claim).

To establish the second element, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted). Given the succession of events, beginning with the hyper-critical and watchful behavior from his supervisor, followed by an allegedly unmeritorious final written warning, ultimately culminating in an unpaid suspension, Wade has sufficiently alleged that he suffered adverse employment actions. *See Shivers v. Saul*, Civ. No. JKB-19-2434, 2020 WL 7055503, at *4 (D. Md. Dec. 2, 2020) (citations omitted) (explaining that where "charges resulted in a five-day unpaid

---

requirement, and therefore are not subject to the 90-day limitations period applicable to a Title VII claim. See *McKenzie-El v. Am. Sugar Ref., Inc.*, No. 21-1089, 2021 WL 5412341, at *2 n.2 (4th Cir. Nov. 19, 2021) ("Title VII's exhaustion requirements don't apply to § 1981 claims."); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013) ("Section 1981 claims are not subject to the same exhaustion and timeliness requirements as those asserted pursuant to Title VII."). Additionally, "[u]nlike Title VII, Section 1981 allows for individual liability." *Brown v. Bratton*, Civ. No. ELH-19-1450, 2020 WL 886142, at *13 (D. Md. Feb. 21, 2020).

suspension, and such decrease in pay qualifies as an adverse employment action that affected the terms and conditions of Plaintiff's employment"); *Dyer v. Oracle Corp.*, Civ. No. PWG-16-521, 2016 WL 7048943, at *6 (D. Md. Dec. 5, 2016) (citations and quotations omitted) (emphasis in original) ("[R]ather than considering each alleged adverse employment action in isolation, courts may consider the cumulative effect of several allegedly retaliatory acts without converting the claim into a hostile work environment claim, and may consider whether based upon the *combined effect* of alleged events, a reasonable worker could be dissuaded from engaging in protected activity.").

Finally, Wade has plausibly alleged causation. *See Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 172–73 (4th Cir. 2020) (noting that "in line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for [his or] her participation in protected activity, [he or] she would not have suffered a materially adverse action."). To demonstrate a causal connection at this stage, a plaintiff need only allege facts "supporting a 'reasonable inference' of causation." *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). Although the timeline before the Court is somewhat imprecise, Wade has alleged that the events—the first use of a slur, the first complaint, the second use of a slur, the second complaint, his supervisor's criticism and hypervigilance, his receipt of a final written warning, his suspension, and his leaving the company—all occurred within a two-month period. (*See* Opp'n to Mot. Dismiss at 1 (alleging that the first use of the slur was in September 2020 and that he worked at Electromet until November 10, 2020).) At this stage, the Court finds that these facts are sufficient to establish a but-for causal connection, particularly given that Wade has alleged that he had received no write-ups or disciplinary action prior to his complaints during the over 17 years he had worked at Electromet. *See Foster v. Univ. of Maryland-*

11

*E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (alterations omitted) ("[Plaintiff's] evidence of temporal proximity also tends to show causation: according to her uncontradicted testimony, she complained to [Human Resources] about perceived retaliation on September 21, 2007, and again on September 28, 2007, just a month before she was terminated."); *see also Mackin v. Charles Schwab & Co.*, Civ. No. DKC 16-3923, 2017 WL 4547423, at *4 (D. Md. Oct. 12, 2017) (denying a motion to dismiss with respect to a retaliation claim where plaintiff was disciplined within two months of the EEOC dismissing her EEOC complaint, where plaintiff had alleged, *inter alia*, that her employer was aware of the complaint and that she had not been disciplined during her employment).

Accordingly, the Court finds that Wade has alleged § 1981 retaliation claims against Electromet and the Individual Defendants.

### IV.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, (ECF No. 22), which sought to dismiss only the Title VII retaliation claim, will be denied with respect to the timeliness argument but will be granted as to the Individual Defendants. Therefore, the Title VII retaliation claim will survive only as to Electromet. The Court also finds that Wade has alleged a § 1981 claim for retaliation against all Defendants. This claim will also survive against all Defendants.

DATED this 6 day of June, 2022.

BY THE COURT:

James K. Bredar
Chief Judge

12